IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**MATTHEW S. LANE**                                                             **PLAINTIFF**

**V.**                           **NO. 3:23-CV-00008-JTK**

**KILOLO KIJAKAZI, Acting Commissioner,**
**SOCIAL SECURITY ADMINISTRATION**                           **DEFENDANT**

**ORDER**

**I. Introduction:**

Plaintiff, Matthew Lane, applied for Title II disability benefits on November 15, 2019, alleging disability within the meaning of the Social Security Act ("Act") beginning on February 1, 2019. (Tr. at 11). His claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Lane's application on January 4, 2022. (Tr. at 24). The Appeals Council thereafter denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Lane has requested judicial review. For the reasons stated below, the Court[1] affirms the ALJ's decision.

**II. The Commissioner's Decision:**

The ALJ found that Lane had not engaged in substantial gainful activity for a continuous twelve-month period. (Tr. at 14). At step two of the five-step sequential

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (*Doc*. 3).

1

process,[2] the ALJ identified rheumatoid or inflammatory arthritis, obesity, and a mood disorder as severe impairments. *Id*. After finding at step three that Lane's impairments did not meet or equal a listed impairment (Tr. at 15), the ALJ determined that Lane had the residual functional capacity ("RFC") to perform work at the light exertional level. (Tr. at 17). The ALJ found that Lane could lift and carry no more than twenty pounds at a time, but he could otherwise frequently lift and carry up to ten pounds. *Id*. Lane had no postural or manipulative limitations; he could stand or walk as much as six hours in an eight-hour workday. *Id*. Lane could perform simple, routine, and repetitive tasks, involving one or two steps, and he could make simple, work-related decisions. *Id*. He could interact with supervisors, coworkers, and he could deal with changes associated with a routine work setting. *Id*.

At step four, the ALJ determined that Lane was unable to perform his past relevant work as a stocker, janitor, deli slicer, or fast-food worker. (Tr. at 22). Relying upon vocational expert ("VE") testimony, the ALJ found—based on Lane's age, education, work experience, and RFC—that he could perform jobs that existed in significant numbers in the national economy, such as price tagger, office cleaner, and storage facility rental clerk. (Tr. at 23). Consequently, the ALJ concluded that Lane was not disabled. (Tr. at 24).

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

**III. Discussion:**

    **A. Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    **B. Lane's Arguments on Appeal**

Lane makes three specific arguments on appeal: (1) that the ALJ failed at step two to recognize certain impairments as severe and failed to consider all of Lane's medically

3

determinable impairments (MDI) when determining his RFC; (2) that the ALJ neglected to consider the medical opinions of Lane's treating physicians and to properly assess the findings of the consulting physicians; and (3) that the ALJ posed a hypothetical question to the VE that did not accurately reflect Lane's impairments. As a final argument, Lane asserts—without supporting citation—that there was insufficient evidence to support the ALJ's decision that Lane was not disabled. For the reasons stated below, the Court finds that substantial evidence supports the ALJ's decision to deny benefits.

### 1. Impairments

For his first argument, Lane contends that the ALJ erred in not finding certain impairments severe at step two and then not considering all of Lane's impairments—severe and non-severe—in determining his RFC. He maintains that the ALJ should have found fibromyalgia, insomnia, chronic pain syndrome, back spasms, and plantar fasciitis as severe impairments at step two. As for the RFC analysis, Lane argues that the ALJ failed to mention hypertension, left leg cellulitis, hypertriglyceridemia, elevated liver enzymes, nonrheumatic mitral valve regurgitation, and acute maxillary sinusitis.

To warrant being considered a severe impairment, the Act requires the impairment significantly limit an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522(a)-(b). An impairment is not severe if it is a slight abnormality or combination of slight abnormalities that have no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. § 404.1522(a). Moreover, the claimant bears the burden of proving the severity of an impairment or

4

combination of impairments. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (noting that although the requirement is not "onerous," it is not a "toothless standard").

The ALJ found three severe impairments—rheumatoid or inflammatory arthritis, obesity, and a mood disorder. (Tr. at 14). Once the ALJ identifies a severe impairment and proceeds past step two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as a whole provides the basis for the determinations at steps three and four. *See* 20 C.F.R. §§ 404.1545(e); Social Security Ruling (SSR) 96-8p (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

Here, the ALJ identified at least one severe impairment and proceeded to the RFC analysis, so the labeling of an impairment as severe or non-severe is of no consequence. Nevertheless, the ALJ specifically mentioned all the impairments Lane argues were severe—fibromyalgia, back pain, insomnia, left knee pain, plantar fasciitis, hypertension, mood disorders, obstructive sleep apnea, hyperlipidemia, nasal septal deformity, and chronic pain—in the RFC assessment. (Tr. at 14, 17-21).

Additionally, to the extent that Lane is arguing that the ALJ erred by failing to discuss left leg cellulitis, hypertriglyceridemia, elevated liver enzymes, nonrheumatic mitral valve regurgitation, and acute maxillary sinusitis in the RFC analysis, that argument also fails. Lane bore the burden of proving his RFC. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). In determining RFC, the ALJ "considers only functional limitations and restrictions" that result from an individual's impairments. SSR 96–8p; 20 C.F.R. § 404.1545. The ALJ made clear that he reviewed Lane's entire medical record and

"considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" when assessing RFC. (Tr. at 17); s*ee also Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work). None of the impairments Lane identifies—left leg cellulitis, hypertriglyceridemia, elevated liver enzymes, nonrheumatic mitral valve regurgitation, or acute maxillary sinusitis—impacted his functional abilities. For instance, Lane's cellulitis and sinusitis were acute conditions that resolved quickly; the record is devoid of any long-lasting impacts on Lane's functional abilities. (Tr. at 910-913, 1027-1028). The ALJ acknowledged that Lane's hyperlipidemia was stable on medication. (Tr. at 14). As for elevated liver enzymes and mild mitral valve regurgitation, the record does not support that either of these conditions caused functional limitations. Under these circumstances, the ALJ did not err by not including left leg cellulitis, hypertriglyceridemia, elevated liver enzymes, nonrheumatic mitral valve regurgitation, and acute maxillary sinusitis in the RFC discussion.

Because the record is clear that the ALJ considered all Lane's functional impairments when assessing his RFC, no error occurred.

### 2. Medical Opinions

Next, Lane argues that the ALJ failed to consider the medical opinions of his treating physicians and to properly evaluate the opinions of non-treating, consulting physicians. Although Lane alleges that the ALJ ignored the opinion of all twelve of Lane's treating medical professionals, not one of these physicians offered a medical opinion as defined by

the regulations. A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in four different areas that include physical demands of work; mental demands of work activities other demands such as seeing, hearing, and using senses; and environmental conditions. 20 C.F.R. § 404.1513(a)(2). While the record is replete with treatment records that qualify as "other medical evidence," *see* 20 C.F.R. § 404.1513(a)(3), which the ALJ did review, Lane has failed to point to one medical opinion that the ALJ did not properly consider. As for the opinions of consulting physicians, Lane argues that the ALJ did not mention that those physicians had never treated or met Lane or whether they were within their area of specialization and expertise.

When evaluating claims filed on or after March 27, 2017,[3] an ALJ will not defer or give any specific evidentiary weight to a medical opinion, regardless of the source. 20 C.F.R. § 404.1520c(a). The ALJ determines the persuasiveness of each medical source or prior administrative medical findings based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other factor that tends to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(a), (c). The ALJ is required to explain the decision as to the two most important factors—supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain the consideration of the other factors. *Id*. "The more relevant the objective medical

---

[3] The Social Security Administration revised its medical evidence rules in 2017, changing both the scope of what evidence constitutes a medical opinion and the way such evidence is considered when evaluating a claim for benefits.

evidence and supporting explanations presented" and the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with evidence from other medical and non-medical sources, the more persuasive the opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2).

Here, two physicians, Kristin Jarrard, M.D., and Jonathan Norcross, M.D., reviewed the medical evidence of record and found Lane could perform a full range of light work. (Tr. at 127, 140). Christal Janssen, Psy.D., also reviewed the medical evidence of record and found that Lane had no severe mental impairment. (Tr. at 137-138). The ALJ found the opinions of Dr. Jarrard and Dr. Norcross persuasive, specifically noting that the opinions were consistent with the totality of the medical evidence of record and supportive of the finding that Lane could perform light work. The ALJ found Dr. Janssen's opinion only partially persuasive, concluding that Lane's mood disorder required additional limitations. Despite Lane's assertion otherwise, the ALJ was not required to explain how he considered factors other than supportability and consistency, and the ALJ's assessment is consistent with the law.

### 3. VE Hypothetical

Lane argues that the ALJ's hypothetical question to the VE in this case did not address all of Lane's limitations. He specifically asserts that the hypothetical question did not accurately reflect the impact of Lane's physical and mental impairments and the side effects of his medications, which Lane contends necessitated additional accommodations and limitations.

The claimant carries the burden of establishing that he is unable to perform his past relevant work at step four; then the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *See Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The Commissioner can meet its burden through one of two means. "If an applicant's impairments are exertional, (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical-vocational guidelines or 'Grids,' which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999) (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). Vocational expert testimony is required "only when the claimant has nonexertional impairments, which make use of the medical-vocational guidelines, or 'grids,' inappropriate." *Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (citing *Beckley*, 152 F.3d at 1059; *Johnston v. Shalala*, 42 F.3d 448, 452 (8th Cir. 1994)). Then, the Commissioner may meet his burden by eliciting testimony from a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). A hypothetical question need only include those impairments and limitations found credible by the ALJ. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005).

In this case, the ALJ proposed two hypotheticals to the VE. The first one asked:

> I want you to assume a hypothetical individual with the same age, education, and vocational profile as the claimant. Assume the individual is restricted to light work. He can lift and carry no more than 20 pounds at a time but can

9

> otherwise frequently lift and carry up to 10 pounds. He can perform activities that require a good deal of walking or standing as much as six hours in an eight-hour workday. Mentally he is able to perform simple routine and repetitive tasks involving one or two steps. He can make simple work-related decisions. He can interact with supervisors, coworkers in usual work situations. And he can deal with changes in a routine work setting. Given those limitations, could that individual return to any of the claimant's past work?

(Tr. at 116). The VE testified that the hypothetical individual could not perform Lane's previous work but that the hypothetical individual could perform light, unskilled jobs such as price tagger, retail marker, office cleaner, and storage facility rental clerks. *Id*. In the second hypothetical, the ALJ asked the following:

> This time I want you to assume the individual is restricted to less than sedentary work. He can lift and carry no more than 10 pounds. He's unable to stand or sit for more than 30 minutes at a time. But can otherwise stand for a total of two hours and sit for a total of three hours in an eight-hour workday. As a result of pain and the effects of medication, he cannot maintain attention and concentration or meet normal attendance, punctuality, and production requirements. He must be able to take frequent naps during the day. Mentally, he has the same limitations as in hypo 1 except that in addition, he cannot deal with the general public on a sustained basis. He cannot tolerate even occasional pressure or stress. And finally, he's prone to frequent mood swings. Given those limitations, would there be any work for such an individual?

(Tr. at 117). The VE answered that the second hypothetical ruled out competitive employment. *Id*.

Here, the ALJ found that Lane retained the ability to perform simple, unskilled light work with some restrictions after considering all the medical records, observations of treating physicians, opinions of consulting physicians, and Lane's own description of his symptoms and limitations. The ALJ carefully examined Lane's severe and non-severe impairments. (Tr. at 14-22). The ALJ addressed Lane's credibility, noting that his

10

statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 18). Specifically in evaluating Lane's subjective complaints, the ALJ considered the type and effectiveness of treatment, the side effects of prescribed medications, prior administrative medical findings, Lane's description of his symptoms, and his daily activities and reported functional activities. (Tr. at 17-22).

Although Lane claims that the ALJ did not consider his mental and physical impairments and the effects of his medications when proposing a hypothetical to the VE, it is clear to this Court that the first question the ALJ proposed to the VE fully set forth the impairments and limitations that the ALJ had accepted as true. Moreover, the VE's response to the first hypothetical question—that an individual with those limitations could perform the jobs of price tagger, office cleaner, and storage facility rental clerk—constitutes substantial evidence supporting the ALJ's conclusion that Lane's impairments did not preclude him from performing light work with certain limitations. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir. 1996) (testimony from VE based on properly phrased hypothetical question constitutes substantial evidence). For these reasons, this Court finds no error on this point.

**4. Substantial Evidence**

In his final point on appeal, Lane generally contends that the ALJ's decision is not supported by substantial evidence. Without citing to any specific evidence in the record, Lane asserts that his many impairments are inconsistent with a finding that he is not disabled. To the extent Lane's broad statements within his fourth point on appeal are

11

construed as an argument that the ALJ's decision is not supported by substantial evidence, the Court disagrees for the reasons set forth above.

## IV. Conclusion:

The Court concludes that the ALJ applied proper legal standards and that substantial evidence on the record as a whole supports the ALJ's decision. The finding that Lane was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 21st day of November, 2023.

_____
UNITED STATES MAGISTRATE JUDGE